Rockingham
No. 91-353

THE STATE OF NEW HAMPSHIRE

v.

PHILIP J. WEEKS

November 23, 1993

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman*, assistant attorney general, and *Donald Feith*, senior assistant attorney general, on the brief, and *Mr. Zuckerman* orally), for the State.

*Hall, Morse, Anderson & Miller, P.C.*, of Concord (*Douglas J. Miller* on the brief and orally), for the defendant.

THAYER, J.   The defendant, Philip J. Weeks, was convicted after a jury trial in Superior Court (*McHugh*, J.) of four counts of theft by unauthorized taking. RSA 637:3 (1986). The defendant raises several issues on appeal, but for the reasons that follow, we affirm.

The defendant is a public accountant who served as chairman and treasurer of the board of trustees of the Home for Aged Women in Portsmouth from 1974 to 1989. The Home for Aged Women (Home), which ceased to exist in 1990, was a charitable organization that cared for elderly women. The defendant was tried on four separate indictments, each alleging a scheme or course of conduct intended to deprive the Home of certain assets. Indictment 90-S-1105 alleged that the defendant exercised unauthorized control over funds deposited in the Home's checking account for purposes unrelated to the administration and management of the Home. Indictment 90-S-1106 alleged that the defendant exercised unauthorized control over funds deposited in the Home's checking account by paying salaries and medical insurance premiums for employees of the defendant's private accounting practice, Philip Weeks & Associates.

Indictment 90-S-1108 alleged that the defendant exercised unauthorized control over the Home's savings account by making withdrawals from and obtaining cashier's checks from the account for purposes unrelated to the administration and management of the Home. Indictment 90-S-1109 alleged that the defendant exercised unauthorized control over the Home's assets by collecting loan payments owed to the Home and not turning them over to the Home. Each indictment, except 90-S-1109, listed numerous transactions; more than 130 separate financial transactions were included in the four original indictments.

The State sought to amend the indictments several times to correct the sum total of funds alleged to have been stolen from the Home, and to correct certain bank account numbers assigned to the Home. The trial court granted each motion over the defendant's ob-

jection, ruling that the amendments were not substantive and did not alter the nature or the classification of the crime. Of the twenty-three transactions ultimately submitted to the jury in indictment 90-S-1105, the jury found that the defendant exercised unauthorized control over Home assets in fifteen of them. Of the thirty-five transactions submitted to the jury in indictment 90-S-1106, the jury found that the defendant exercised unauthorized control over Home assets in twenty-two of them. Of the sixteen transactions submitted to the jury in indictment 90-S-1108, the jury found that the defendant exercised unauthorized control over the Home's assets in twelve of them. The jury also convicted the defendant of keeping over $16,000 of the Home's loan proceeds, alleged in indictment 90-S-1109.

On appeal, the defendant argues that the court erred in (1) allowing the State to amend indictments 90-S-1105, 90-S-1106, and 90-S-1108; (2) refusing to dismiss indictment 90-S-1109 on the ground that it did not include every element of the offense; and (3) in not instructing the jury that the statute of limitations was an element of the offense in indictment 90-S-1109. The defendant also contends that: (4) the State presented insufficient evidence to prove the four indictments beyond a reasonable doubt; (5) the State's prosecution of the defendant on unsupported theft allegations prejudiced him and required a mistrial; and (6) pre-accusation delay denied him due process under both the State and Federal Constitutions. We will address these arguments seriatim.

## I. Indictment Amendments

The defendant contends that the repeated amendments of indictments 90-S-1105, 90-S-1106, and 90-S-1108 violated his statutory and constitutional right to be tried only upon a felony indictment returned by a grand jury. Indictment 90-S-1105 was amended three times before the trial: first to correct the Home's checking account number and reduce the amount alleged to have been stolen from the Home; then to delete one transaction from the indictment, requiring a downward adjustment of the total amount alleged to have been stolen from the Home; and finally, to delete several transactions from the indictment, which again required a downward adjustment of the total amount alleged to have been stolen, and to correct the check number identified in another transaction. After all of the amendments, the indictment, which originally alleged that $52,097.48 was stolen, alleged that $45,144.61 had been stolen.

Indictment 90-S-1106 was amended twice. Both amendments corrected the amount of salary or insurance benefits, allegedly stolen

from Home funds, that were paid to various employees at Philip Weeks & Associates. The amendments caused a slight downward adjustment in the total amount of the indictment, from $167,223.73, to $160,212.62.

Indictment 90-S-1108 was amended three times before trial: first to delete two transactions and reduce the total amount alleged to have been stolen; then to reinsert one of the transactions that should not have been deleted; and, finally, to delete all of the transactions involving cash withdrawals from the Home's savings account and two of the transactions involving cashiers checks. The total amount alleged to have been stolen was adjusted downward from $129,631 to $74,467. The defendant argues that the amendments substantially changed the character of the offenses charged in all three amended indictments. We disagree.

Indictments may be amended as to matters of form, but not as to matters of substance. See State v. Johnson, 130 N.H. 578, 585, 547 A.2d 213, 217 (1988); State v. Erickson, 129 N.H. 515, 519, 533 A.2d 23, 25 (1987). The amendments at issue here did not change the offense charged because the statute provides that theft constitutes a class A felony if the value of the stolen property or services exceeds $1,000. RSA 637:11, I(a) (1986 & Supp. 1992); see also State v. Spade, 118 N.H. 186, 189, 385 A.2d 115, 116 (1978). The value of the property alleged to have been stolen in both the original and amended indictments exceeds $1,000, and there was no change in proof required for the other elements of the offense. The amendments, by making such changes as correcting account and check numbers, served to provide better notice to the defendant to aid him in preparing his defense. We hold that the amendments did not effect a substantive change in the offense charged, and were therefore properly allowed.

## II. Dismissal of Indictment

The defendant contends that the State's failure to negate a potential defense under the statute of limitations as an element of the offense renders indictment 90-S-1109 fatally defective. See RSA 625:11, III(d) (1986). The indictment, dated June 12, 1990, alleged that the defendant "did commit the crime of Theft by Unauthorized Taking in that, pursuant to one scheme or course of conduct, Philip J. Weeks exercised unauthorized control over $16,450, the property of Home for Aged Women, with the purpose to deprive it thereof" by accepting loan payments on behalf of the Home on January 25, 1983, April 11, 1983, and January 24, 1984, and failing to turn these payments over to the Home.

In his motion to dismiss indictment 90-S-1109, the defendant noted that the course of conduct for which he was charged occurred between January 1983 and January 1984. Relying on the six-year statute of limitations for felony prosecutions, the defendant argued that the statute of limitations expired between January 1989 and January 1990, well before the indictment was returned in June 1990. In its objection to the defendant's motion, the State relied on RSA 625:8, III(a) (1986). RSA 625:8, III provides in pertinent part:

"If the period prescribed in paragraph I [six years in this case] has expired, a prosecution may nevertheless be commenced: (a) Within one year after its discovery by an aggrieved party or by a person who has a duty to represent such person and who is himself not a party to the offense for a theft where possession of the property was lawfully obtained and subsequently misappropriated . . . ."

The State submitted affidavits from the director of the charitable trust division in the attorney general's office and the financial research analyst who was assigned to the case. The affidavits established that on June 1, 1989, the division of charitable trusts was informed that the Home told residents that it would close due to financial reasons. On June 15, 1989, the director of the charitable trust division met with the lawyer representing the Home's board of trustees and reviewed financial records. In July 1989, the financial analyst was assigned to investigate the circumstances surrounding the Home's financial failure.

The trial court ultimately denied the defendant's motion, ruling that the one-year discovery provision contained in RSA 625:8, III applied to the case and brought the indictments within the statute of limitations. While the record does not enable us to pinpoint when the charitable trust division "discovered" the alleged thefts, the record does show that this date had to have been after June 1989. Therefore, the trial court did not err as a matter of law in applying RSA 625:8, III to this case and refusing to dismiss indictment 90-S-1109.

*III. Jury Charge*

The defendant argues that the trial court erred in refusing to instruct the jury that the statute of limitations was an element of the offense that required proof beyond a reasonable doubt. The defendant's argument is based on RSA 625:11, III(d) (1986), which defines "element of an offense" to include "conduct, or such attendant circumstances, or such a result of conduct as . . . [n]egatives a defense

under the statute of limitations." The defendant argues that because at least some of the conduct alleged in each of the indictments occurred beyond the six-year statute of limitations, RSA 625:11 makes the statute of limitations an element of theft by unauthorized taking. According to the defendant, the trial court erred because the jury was not instructed on the existence of this defense and the factual issues material to a defense under the statute of limitations.

We reject the defendant's argument. RSA 626:7, I(a) (1986) provides that "[w]hen *evidence is admitted* on a matter declared by this code to be [a] defense, the state must disprove such defense beyond a reasonable doubt." (Emphasis added.) Therefore, the State's burden is triggered only when evidence pertaining to the statute of limitations is admitted at trial. This did not occur. While the defendant raised the statute of limitations issue in a proposed jury instruction, he did not join the issue at trial, and the defendant does not point to any evidence in the record to support this theory of defense. As there was no defense raised at trial, the statute of limitations did not become an element of the offense under RSA 625:11, III(d), and the trial court did not err in refusing to give the defendant's requested instruction.

## IV. Insufficiency of the Evidence

The defendant argues that there was insufficient evidence to prove all the elements of theft charged in the four indictments. To prevail on this argument, the defendant must "show that no rational fact finder, viewing the evidence most favorably to the State, could have found [him] guilty beyond a reasonable doubt." *State v. Ward,* 134 N.H. 626, 628, 595 A.2d 508, 509 (1991). To prove the class A felony of theft by unauthorized taking, the State had the burden of proving that (1) the defendant exercised unauthorized control over (2) the property of another (3) with the purpose to deprive the other person of that property permanently or to keep and use the property in such a way that a substantial portion of its economic value, or the use and benefit thereof, would be lost (4) under a certain scheme or course of conduct, and (5) the combined value of the property listed in each indictment was over $1,000. RSA 637:2, :3, :11, I(a) (1986 & Supp. 1992).

The defendant first contends that there was insufficient evidence to support the jury's finding of the existence of four separate schemes or courses of conduct, as alleged in the indictments. The defendant substantiates this contention, however, with a comparison of indictments 90-S-1105 and 90-S-1106 only. We therefore limit our inquiry to those two indictments.

RSA 637:2, V(a) requires proof of "one scheme or course of conduct" in order to aggregate dollar amounts of individual thefts in determining the grade of the offense. The State's burden at trial is to prove that the individual thefts alleged in each indictment were actuated by a single criminal impulse or intent. *State v. Sampson*, 120 N.H. 251, 256, 413 A.2d 590, 592 (1980).

■ According to the defendant, indictments 90-S-1105 and 90-S-1106 cannot sustain a finding of a different scheme or course of conduct as to each indictment because both indictments involve thefts from a single bank account during the same time frame. The defendant's argument is without merit. Throughout the trial, the State consistently referred to indictment 90-S-1106 as the "salary and benefits" indictment. The State submitted evidence that the defendant issued salary checks from the Home to his employees who did some accounting work for the Home, and he paid medical insurance premiums for all of his employees with Home funds. The State submitted evidence for indictment 90-S-1105 that showed that the defendant also issued checks from the same account for what the State argued were the defendant's own personal expenses, including: several payments to the manager of a local golf shop, payments for television sets that were not used at the Home, a single payment for a passenger van registered in the defendant's name, checks for which the defendant was the named payee, and checks for computer equipment used in the defendant's accounting practice. Clearly, the acts alleged in indictment 90-S-1105 were independent from those alleged in indictment 90-S-1106.

■ The defendant next argues that in order for the State to prove a continuing course of conduct, it had to prove each allegation contained in the indictments, otherwise there could be no continuing course of conduct or continuing criminal intent over the entire time period covered by the various allegations. The State bore the burden of proving that the defendant's conduct in each indictment was part of a general scheme or plan motivated by a continuing criminal impulse or intent. *See Sampson, supra* at 256, 413 A.2d at 592. The State, therefore, was not required to prove that the defendant's criminal intent continued on a daily, weekly, or monthly basis. For indictment 90-S-1105, the State did prove that from October 1976 to April 1988, the defendant used the Home's checking account as his own personal checking account. As alleged in indictment 90-S-1106, the State proved that from 1981 to 1988, the defendant used the Home's checking account to pay his own employees and to pay his

employees' medical insurance premiums. The fact, as shown by the special jury verdict form, that the jury did not convict the defendant on every transaction alleged in each indictment means only that there was insufficient evidence as to those transactions, not that there was insufficient evidence for them to find a continuing course of conduct.

■ The defendant next argues that there was insufficient evidence for the jury to find that the expenditures made by the defendant were unauthorized by the board of trustees. Other members of the Home's board of trustees testified that they freely delegated financial decisions to the defendant because he had expertise in that area. At trial, the State introduced the minutes of the meetings of the board of trustees to show that there was no express authorization of various expenditures. The defendant argues that the State failed to prove that the defendant did not have implied authority to make certain expenditures, and failed to show that the expenditures were not ratified by the board. "To have implied authority, an agent must be performing an act that is appropriate in the ordinary course of the corporation's business." 18B AM. JUR. 2D *Corporations* § 1525 (1985) (footnote omitted). With this standard in mind, we do not see how the defendant can seriously contend that he had implied authority, for example, to spend $1,250 of Home funds to go to the Bahamas with his wife, or $1,783 for work done to his home, to give his friend over $5,000, or to take a $25,000 "finder's fee" on a loan transaction where the terms of the loan provided that the finder's fee would be paid to the Home. These expenditures, along with numerous others proven by the State, constitute sufficient evidence to support a jury finding that the transactions were unauthorized.

■ The defendant also claims there was insufficient evidence to support a finding that he had the purpose to deprive the Home of its property. At trial, there was testimony that the defendant's accounting office served a "dual function" in that both his accounting practice and the Home's business office were in the same office space. The defendant further argues that because various business-related expenditures, including installing cabinets in his office and paying photocopying expenses, served to benefit the Home, the Home was not deprived of its property. This argument was rejected by the legislature through the enactment of the theft statute, which "provides that a person 'obtains' property, for purposes of the statute, if that person brings about 'a transfer of possession or of some other legally recognized interest in property.'" *State v. Gruber*, 132 N.H. 83, 93,

562 A.2d 156, 162 (1989) (quoting RSA 637:2, II (1986)). The fact that some of the "benefits" of the defendant's thefts flowed to the Home is irrelevant. *See id.*

■ The defendant contends further that the State failed to prove intent to deprive on indictment 90-S-1109 because the State did not prove that the loan payments in question were never repaid to the Home. At trial, the defendant testified that he collected over $16,000 in cash from the debtor and put the money in a filing cabinet in his office where "it just sat . . . for awhile," and that he "put it back into the system" but could not recall exactly how this was accomplished. The financial investigator testified that he examined the Home's receipt documents, bank deposit books and statements, and the bank's records of activity in the Home's savings and checking accounts, but could find no transactions showing that the defendant returned the funds to the accounts. The credibility of witnesses is a matter within the jury's purview. *Colby v. Avery*, 93 N.H. 250, 254, 40 A.2d 841, 844 (1945). After examining the evidence, and reasonable inferences to be drawn therefrom, in the light most favorable to the State, we conclude that a rational jury could have found both the purpose to deprive and guilt beyond a reasonable doubt.

## V. Prosecutorial Overreaching

The defendant argues that because twenty-three alleged transactions, totalling over $65,000, were removed from indictments 90-S-1105, 90-S-1106, and 90-S-1108 during trial, the State's initial inclusion of these transactions in the indictments constituted overreaching. He argues that "[t]he State's deliberate decision to proceed to trial on wholly unsupported allegations seriously prejudiced [him]."

■ "In order for there to be prosecutorial overreaching, the government must have, through gross negligence or intentional misconduct, caused aggravated circumstances to develop which seriously prejudiced a defendant . . . ." *State v. Lake*, 125 N.H. 820, 823, 485 A.2d 1048, 1051 (1984). The prosecutor in *Lake* introduced facts in his closing argument tending to bolster the credibility of a "crucial" witness's testimony. *Id.* at 821–22, 485 A.2d, at 1050. Although we characterized the prosecutor's conduct in *Lake* as "improper," we nevertheless held that the conduct still did not rise to the level of "overreaching." *Id.* at 823, 485 A.2d at 1051. In light of our holding in *Lake*, we are not persuaded that there was any impropriety on the part of the State that would rise to the level of gross negligence or

intentional misconduct. The State's willingness to delete a number of transactions from the indictments shows, if anything, that the State sought to avoid prejudicing the defendant.

In connection with his claim of prosecutorial overreaching, the defendant asserts that the State was appealing to "class prejudice" by prosecuting several transactions in which the defendant paid a local golf professional with checks drawn on the Home's account. The fact that the jury ultimately did not convict the defendant of every golf-related transaction indicates that the jury evaluated evidence objectively. The record does not reveal any facts that could form the basis of a conclusion that the State was grossly negligent or acted in bad faith in seeking to prove the transactions.

## VI. Pre-indictment Delay

The defendant argues that unreasonable pre-indictment delay prejudiced his ability to defend himself and violated due process under both the State and Federal Constitutions. When a defendant invokes both the State and Federal Constitutions, we will consider the State claim before addressing the federal claim, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), but we may nevertheless rely on federal precedent for guidance in construing similar provisions of the New Hampshire Constitution. *Id.* at 233, 471 A.2d at 351–52. In order to prevail on his claim of unreasonable pre-indictment delay, the defendant must first show that the delay caused actual prejudice before the court will balance the prejudice against the reasonableness of the delay. *See State v. Ramos*, 131 N.H. 276, 282, 553 A.2d 275, 279 (1988) (citing *United States v. Lieberman*, 608 F.2d 889, 902 (1st Cir. 1979), *cert. denied*, 444 U.S. 1019 (1980)); *see also State v. Adams*, 133 N.H. 818, 824, 585 A.2d 853, 856 (1991).

The defendant claims that actual prejudice did result at trial, "as evidence was lost, memories were diminished and witnesses were unavailable." We have held, however, "that the possibility of prejudice due to the dimming of memories is inherent in any delay, and, alone, is insufficient to constitute a denial of due process." *State v. Philibotte*, 123 N.H. 240, 244, 459 A.2d 275, 277 (1983). The unavailable witness identified by the defendant is the salesperson who handled the transaction in which the defendant purchased a van with Home funds. The general manager of the dealership that sold the van testified that the defendant received a $3,000 trade-in allowance for a 1977 van. The title and registration for the 1977 van named the Home for Aged Women as the owner. The records indicated that the

defendant used $8,650 from the Home's checking account to purchase a 1980 Dodge van, taking title in his own name and registering it in his own name. The defendant has not indicated what the unavailable witness's testimony would have added and, therefore, has failed to show how he was prejudiced by the lack of that testimony.

The defendant also claims that because some of the transactions alleged in the indictments date back to the 1970s, he was prejudiced because the businesses and organizations involved did not keep records dating back to those years. While it is true that there was not documentation for every transaction alleged in the indictment, this fact also prejudiced the State's ability to carry its burden of proof, as did the witnesses' faded memories. The defendant makes no claim that the State intentionally delayed prosecution to gain a tactical advantage, and we hold that the defendant has not met his burden of proving that the length of time between the transactions and the prosecution caused actual prejudice. *See State v. Lacourse*, 127 N.H. 737, 741, 506 A.2d 339, 341 (1986).

Because the Federal Constitution affords the defendant no greater protection than does our own, we need not make an independent federal analysis. *See State v. Ball*, 124 N.H. at 231–32, 471 A.2d at 350–51.

Finding no error in the defendant's trial, we affirm his convictions.

*Affirmed.*

All concurred.