35 P.3d 197

STATE of Hawai'i, Plaintiff–Appellee,

v.

Darrel M. CRAIL, Defendant–Appellant,

and

Rilei Shepard, also known as
Rilei Edwards–Sheppard,
Defendant.

No. 23007.

Supreme Court of Hawai'i.

Oct. 30, 2001.

Stuart N. Fujioka, Honolulu, for defendant-appellant, on the briefs.

Caroline M. Mee, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee, on the briefs.

MOON, C.J., NAKAYAMA, RAMIL, and ACOBA, JJ. with LEVINSON, J., Concurring Separately.

## Opinion of the Court by ACOBA, J.

We hold, in this appeal by Defendant–Appellant Darrell Crail (Defendant) from a November 18, 1999 judgment of conviction and sentence for violations of Hawai'i Revised Statutes (HRS) § 712–1243 (Supp.1999) (Count I) and HRS § 329–43.5 (1993) (Count II), that the first circuit court (the court)[1] did not err in denying his motion to dismiss for preindictment delay. Contrary to his contentions, we conclude that Defendant did not demonstrate substantial prejudice from his alleged loss of memory or from the loss of potential witnesses and evidence, *see State v. Carvalho,* 79 Hawai'i 165, 167, 880 P.2d 217, 220 (App.), *cert. granted,* 77 Hawai'i 373, 884 P.2d 1149 (1994), *cert. dismissed as improvidently granted,* 78 Hawai'i 474, 896 P.2d 930 (1995), or from the failure of the police to tape record his confession. *See State v. Kekona,* 77 Hawai'i 403, 410–11, 886 P.2d 740, 747–48 (1994).

However, we also hold that the locations of illegal drugs and drug paraphernalia were required to be proven by Plaintiff–Appellee State of Hawai'i (the prosecution). Thus, jury instructions which identified such locations constituted improper comments by the court on the evidence, which error requires that Defendant's November 18, 1999 conviction and sentence be vacated and the case remanded for a new trial. *See State v. Tanaka,* 92 Hawai'i 675, 994 P.2d 607, *reconsideration denied,* 92 Hawai'i 675, 994 P.2d 607 (App.1999), *cert. dismissed,* 92 Hawai'i 675, 994 P.2d 607 (2000); HRS chapter 262, Hawai'i Rules of Evidence (HRE) Rule 1102 (1993).

We hold that because Defendant's motion for judgment of acquittal or, in the alternative, motion for a new trial, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rules 29 (2000) and 33 (2000), respectively, was untimely, the court did not err in denying it. Finally, in light of the remand, we determine, as is necessary, that there was sufficient evidence to have supported Defendant's convictions.

For the foregoing reasons, we vacate the court's November 18, 1999 judgment of convictions and sentence and remand the case for disposition as set forth herein.

## I.

### A.

In 1997, several complaints of suspected drug activity at a residence in Nānākuli, O'ahu (the residence) were filed with the Narcotics/Vice Division of the Honolulu Police Department (HPD). On September 24, 1997, a search warrant was issued for the residence. Defendant was the only one named in the warrant as a person to be searched. HPD executed the warrant on October 1, 1997 and recovered from the residence: (1) a glass pipe with residue, containing .045 grams of methamphetamine, identified at trial as Exhibit 1; (2) four ziploc bags, containing .410 grams of methamphetamine, identified as Exhibit 2; (3) ziploc bags in a plastic container, containing .265 grams of methamphetamine, identified as Exhibit 3; (4) a scale with .002 grams of methamphetamine, identified as Exhibit 4; and (5) a scraper, identified as Exhibit 40. On the day of the search, Defendant was arrested and transported to the Wai'anae police station. At the station, Defendant was notified of his constitutional rights and, thereafter, provided a statement to the police.

On February 2, 1999, a year and four months after his arrest, Defendant was indicted by the grand jury. The first count of the indictment charged Defendant with the offense of promoting a dangerous drug in the third degree, HRS § 712–1243,[2] and the sec-

---

1. The Honorable Reynaldo D. Graulty presided over the trial and post-trial matters.

2. Count I of the indictment charged Defendant with the offense of promoting a dangerous drug in the third degree as follows:

ond count charged him with the offense of unlawful use of drug paraphernalia, HRS § 329–43.5(a).[3]

In Counts III and IV of the same indictment, the prosecution charged Co Defendant Rilei Shepard, also a resident of the searched premises, with the same offenses. On June 29, 1999, Shepard entered a plea of guilty pursuant to a plea bargain.

On July 14, 1999, Defendant filed a motion to dismiss the charges, alleging prejudice from preindictment delay. He argued that the indictment was untimely and, thus, violated his right to due process[4] because it substantially prejudiced his ability to collect and to present lost "evidence which implicated other occupants as the possessors of the contraband for which he now stands accused." According to Defendant, "[o]ver the . . . 18 months [prior to the indictment], the rooms and residence have changed and there is no way to reconstruct the evidence, such as identification materials and the pants in which [Exhibit 1,] the pipe[,] was found, so as to establish the real owners of the pipe and drugs."

The prosecution, in its opposition memorandum, argued that Defendant had not shown substantial prejudice resulting from his alleged loss of memory or lost potential witnesses.[5] It asserted that the "approximately fifteen months" transpiring from the search to the indictment was not prejudicial because Defendant had received a copy of the search warrant and, thus, was aware of the basis for the charges.

On July 14, 1999, Defendant also filed a motion to suppress the aforesaid Exhibits 1–4 and the interview and/or statements made by him to the police on October 1, 1997. In this regard, Defendant claimed that the warrant was improperly executed, there being no record that he or anyone else in the residence saw or received the warrant, and that his statements were inadmissible because he had not "knowingly waive[d] his right to counsel or against self-incrimination."

The motion to dismiss and motion to suppress were consolidated for hearing on August 6, 1999. At the hearing, HPD Officer Phillip Aguilar testified that, on October 1, 1997, he showed and served Defendant a search warrant, although this event was not

---

On or about the 1st day of October, 1997, in the City and County of Honolulu, State of Hawaii DARREL M. CRAIL did knowingly possess the dangerous drug methamphetamine, thereby committing the offense of Promoting a Dangerous Drug in the Third Degree, in violation of Section 712–1243 of the Hawaii Revised Statutes.

3. Count II of the indictment charged Defendant with the offense of unlawful use of drug paraphernalia as follows:

On or about the 1st day of October, 1997, in the City and County of Honolulu, State of Hawaii DARREL M. CRAIL did use or possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Chapter 329 of the Hawaii Revised Statutes, thereby committing the offense of Unlawful Use of Drug Paraphernalia, in violation of Section 329–43.5(a) of the Hawaii Revised Statutes.

4. Defendant did not specify in his motion to dismiss for preindictment delay whether his due process claim was made under the United States or Hawai'i Constitution. Rather, he broadly contended that, "[e]ven if the indictment was filed before expiration of the statute of limitations, due process has been violated." Whether Defendant

relies upon a federal or state due process claim does not significantly alter our analysis because our view of preindictment delay as an aspect of the right of due process is substantially similar to that applied under the United States Constitution. *See Carvalho*, 79 Hawai'i at 167, 880 P.2d at 220 (establishing that preindictment delay resulting in substantial prejudice is a constitutional due process violation under the United States and Hawai'i Constitutions).

Article I, section 5, the due process clause of the Hawai'i Constitution, provides in part that "[n]o person shall be deprived of life, liberty or property without due process of law...."

The fourteenth amendment to the United States Constitution provides in relevant part that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"

5. Defendant implicitly argued in his motion to dismiss that the preindictment delay led to the loss of potential witnesses, *i.e.*, that he was unable to collect evidence linking others to the contraband and that "Stacy Edwards [ (Defendant's girlfriend) ], who shared [a bed]room attributed [to D]efendant, has moved to the mainland." From these statements, it appears that Defendant maintains that Stacy was one of the witnesses lost because of the preindictment delay.

indicated in his written police report. According to Aguilar, after the search of the residence, he arrested Defendant and took him to the Wai'anae police station. There, Aguilar showed Defendant an "HPD Form 81" entitled "Warning Persons Being Interrogated of Their Constitutional Rights" and read it to him. Defendant acknowledged understanding his constitutional rights and signed the form. Aguilar related that Defendant also inspected and signed an inventory sheet listing all the items seized in the execution of the search warrant.

According to the officer, at the time of the interview, Defendant was not under the influence of any drugs or alcohol and was not coerced in any manner. Aguilar admitted Defendant's statement was not tape recorded, but indicated he did not ordinarily tape record interviews and he had forgotten the tape recorder at another office. The officer reported that he typed Defendant's statement in Defendant's presence on "HPD Form 252" and then reviewed the statement with him before Defendant signed it.

Following the parties' arguments on the motions, the court denied Defendant's motion to dismiss on the ground that Defendant had failed to show any substantial prejudice such as the death or disappearance of a defense witness during the delay. The court found the search warrant was "either given to [Defendant] or left there [at the residence]." Despite the lack of an audio or video tape recording of Defendant's statement, the court determined that there was "uncontroverted [evidence] that the officer covered all the basis [sic] under HPD Form 81"[6] before extracting Defendant's statement. As a result, the court also denied Defendant's motion to suppress the items seized, as well as his statement.

On appeal, Defendant challenges the court's ruling on his motion to dismiss, but does not contest its ruling on his motion to suppress.

### B.

On August 17, 1999, after the jury was impaneled but before opening statements, Defendant requested a voluntariness hearing on the admissibility of his HPD Form 252 statement, identified at the hearing as Exhibit 8.[7] In the statement, Defendant acknowledged: (1) living at the residence; (2) purchasing, using, and distributing drugs; (3) "smok[ing] crystal methamphetamine with Riley [sic]" the night before the search; and (4) owning "[t]he pipe with the residue that was found in the room ... and the packets of 'ice'." The statement also confirmed that Defendant gave "th[e] statement of [his] own free will."

At the hearing, Aguilar testified, as he had before, to the procedure followed in obtaining the Form 252 statement. Defendant testified that he chose to speak with Aguilar, but did not agree with some of the statements on Form 252 because they were incorrect[8] and

6. "HPD Form 81" was identified as Exhibit 7 at the hearing to determine Defendant's voluntariness in making the statement. Also attached to HPD Form 81, as a part of the exhibit, was an inventory list of the items seized during the search of the residence, which was signed by Defendant.

7. The following incriminating statement of Defendant was typed on "HPD Form 252" by Aguilar:

I, Darrel Michael CRAIL, live and reside in the downstairs bedroom.... I have been selling crystal methamphetamine steadily for the past 1½ months. I have been buying the crystal methamphetamine that I sell from a guy .. who I know from school days. I usually buy anywhere from a quarter gram to one half sixteenth from $50.00 to $90.00. I sometimes get good deals of one half sixteenth for $70. I usually make at least fifty percent profit, keeping for myself at least five $20 papers. The woman named Stacey [sic] EDWARDS also known as Para also deals drugs.... I last smoked crystal methamphetamine last night, 9–30–97 with Stacey [sic]. I have also smoked crystal methamphetamine with Riley [sic] EDWARDS [sic] also last night. I started to deal because I'm out of a job and I found out that I could smoke two free $20 papers of ice rather that paying forty dollars to buy ice. The pipe with the residue that was found in the room is mine and the packets of ice is [sic] also mine which I picked up last night 9–30–97 for $100.00.... I want to get out of using and dealing drugs and I know I need help. I am giving this statement of my own free will.

8. At the hearing, Defendant asserted he never made the following statements to Aguilar:
(1) "I smoked with Rilei last night";
(2) "I smoked with Stacy and Rilei the night before"; and

oversimplified comments made during his twenty minute interview. Defendant explained that some of the statements may have been made by Rilei, who was interviewed before Defendant. According to Defendant, he did not sign the form voluntarily, but did so only because Aguilar told him that if he did not sign it, the owner of the house, his father, and Defendant's girlfriend, Stacy, would be arrested. Defendant indicated that he gave a false statement to prevent his father, Rilei, and Stacy from "get[ting] in trouble."

At the conclusion of the hearing, the court found Defendant had voluntarily made the statement to Aguilar and allowed it to be offered into evidence.[9] The court's ruling at the voluntariness hearing is not challenged by Defendant on appeal.

### C.

The following relevant evidence was adduced at trial. HPD Officer John Haina testified that, as a member of the team executing the search warrant, he was assigned to knock on the door of the residence, to announce the police had a warrant, and to make entry. Upon entering the residence, Haina located Defendant in a bedroom, identified for trial purposes as bedroom 1. After securing the residence, Haina and his team turned the residence over to the narcotics officers to search.

HPD Detective William Passos, who was part of the narcotics team, stated that he was assigned to search bedroom 1. While searching bedroom 1, he found the items previously described as Exhibits 1-4, an identification card bearing Defendant's name (Exhibit 38), and a metal rod with flattened ends used as a "scraper," identified as Exhibit 40.

HPD Officer Paul Pladera testified that he recovered the aforesaid evidence from Passos, sealed the items in envelopes, marked the envelopes with descriptions of who found the items and the general areas where the

(3) "the pipe with residue is mine."

9. The court stated that it
believe[d] in this case and [found] that [Defendant] voluntarily made the statements at the Waianae police station on October 1, 1997 to Officer Aguilar; and that while there might be

items were found, and submitted the items to the evidence room.

Aguilar testified that, as the lead narcotics investigator, he oversaw the search. He found Defendant in bedroom 1, showed him a copy of the search warrant, and provided him with a copy of it. Aguilar recounted, as he had at the prior hearings, that Defendant was warned of his constitutional rights, waived his rights, agreed to give a statement, and that Aguilar typed Defendant's statement on Form 252.

Defendant related that at the time of the search he was not renting a room at the residence so he slept in any room that was not occupied, which was usually bedroom 1 or the bedroom designated as bedroom 4 for trial purposes. According to Defendant, he shared bedrooms 1 and 4 with Stacy. Defendant acknowledged that he was found by the police in bedroom 1.

Defendant again claimed, as he did at the voluntariness hearing, that he signed HPD Form 252, despite its inaccuracies, because he "didn't want everyone in the house [to] be involved in this and have to come down [to the station] and make a statement." As related by Defendant, he falsely told Aguilar that he bought or used drugs because he wanted "to divert questionings [sic] towards Stacy and [his] father."

Defendant claimed he was not aware that any drugs were present in the house. He identified the pants in which the glass pipe, Exhibit 1, was found as belonging to Stacy, but denied knowing who owned the glass pipe. Defendant professed not to know Exhibit 1 was found in the bathroom of bedroom 1. He also denied knowledge of where the ziploc packets of methamphetamine, Exhibit 2, or the scale, Exhibit 4, "came from" or who they "belonged to." He further denied ever seeing Exhibit 2 or that it was "in [his] mattress under the sheet." He refuted the prosecution's assertion that the scale,

some dispute as to the accuracy of some of the statements contained in the HPD Form 252, the [c]ourt [found] that there was sufficient voluntariness such that the statement should be admitted into evidence.

Exhibit 4, was recovered from his bedroom and indicated he had seen it previously in Rilei's room. According to Defendant, the police photograph of the scale was not of his room, but "upstairs." As for Exhibit 3, Defendant disclosed that the plastic container containing methamphetamine belonged to Stacy and that she kept it in bedroom 1. However, he denied knowledge of the container's contents. Defendant testified he had seen Exhibit 40, the scraper, in Rilei's room.

On August 18, 1999, after the prosecution's case-in-chief, Defendant orally moved for judgment of acquittal as to both counts, arguing that the prosecution had failed to establish a prima facie case as to either charge. In response, the prosecution referred to evidence that the packets of methamphetamine, a scale, and a pipe were recovered from Defendant's bedroom, and asserted that there was "enough evidence to warrant a reasonable juror to find [D]efendant guilty." The court denied Defendant's motion for judgment of acquittal because, "viewing the evidence in light most favorable to the prosecution[,] ... a reasonable mind may find guilt beyond a reasonable doubt."

In closing argument, defense counsel argued that there was a dispute as to the location of some of the items, including the scale, Exhibit 4.[10]

The court instructed the jury on August 18, 1999. Instruction No. 18 read as follows:

As to Count I, in order for you to find Defendant Darrel M. Crail guilty of the offense of Promoting a Dangerous Drug in the Third Degree, you must unanimously answer at least one of the following questions with a "yes" response on the special interrogatory form which will be provided to you:

Did you unanimously find beyond a reasonable doubt that Defendant Darrel M. Crail was in *actual or constructive possession* of any one of the following:

1. State's Exhibit 1—methamphetamine found in the glass cylindrical pipe *located inside of jeans shorts in the bathroom of bedroom # 1.*

Yes_____ No_____

2. State's Exhibit 2—methamphetamine found in five ziploc packets that were in a larger ziploc bag, *located on the folding mattress in bedroom # 1.*

Yes_____ No_____

3. State's Exhibit 3—methamphetamine found in four ziploc packets *that were in a plastic container located under the mattress near the small refrigerator in bedroom # 1.*

Yes_____ No_____

4. State's Exhibit 4—methamphetamine found on the Calibron twin beam scale, *located on the top of the refrigerator in bedroom # 1.*

Yes_____ No_____

If you are not unanimous in finding beyond a reasonable doubt that Defendant Darrel M. Crail was in either *actual or constructive possession* of at least one of the above listed items, then you must find Defendant not guilty of the offense of Promoting a Dangerous Drug in the Third Degree.

(Emphases added.) In a similar vein, the court instructed the jury regarding Count II as follows:

As to Count II, in order for you to find Defendant Darrel M. Crail guilty of the offense of unlawful possession of drug paraphernalia, you must unanimously answer at least one of the following questions with a "yes" response on the special interrogatory form which will be provided to you:

Did you unanimously find beyond a reasonable doubt that Defendant Darrel M. Crail was in actual or constructive possession of any one of the following:

1. State's Exhibit 1—Glass cylindrical pipe containing methamphetamine residue, found inside of jeans shorts *in the bathroom of bedroom # 1.*

Yes_____ No_____

10. Defense counsel argued as follows with respect to the dispute of the scale's location:

There is a dispute even as to where some of the items were found. The police have told you[, the jury,] the scale was in bedroom number 1. Darrel Crail specifically remembers it's from Rilei Shepard's upstairs room. Rilei will say no, no, it wasn't in my room but I can't remember where it is, where it was....

2. State's Exhibit 4—Calibron twin beam scale, dark green in color, containing methamphetamine residue, *found on top of the small refrigerator in bedroom # 1.*

Yes_____ No_____

3. State's Exhibit 40—One iron scraper with both ends flattened, *found on top of the circular table in bedroom # 1.*

Yes_____ No_____

If you are not unanimous in finding beyond a reasonable doubt that Defendant Darrel M. Crail was in either *actual or constructive possession* of at least one of the above listed items, then you must find Defendant not guilty of the offense of unlawful possession of drug paraphernalia.[11]

Instruction No. 20 (emphases added).

In Instruction No. 5, the court provided the jury the following definition of actual and constructive possession:

The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion over a thing, either directly or through another person or persons, is then in constructive possession of it.

On August 19, 1999, the jury rendered a verdict of guilty as charged against Defendant on Counts I and II. On the special interrogatory forms, the jury found beyond a reasonable doubt, with respect to Count I, that Defendant was in possession of Exhibits 1, 2, 3, and 4 and, with respect to Count II, that Defendant was in possession of Exhibits 1, 4, and 40.

On September 2, 1999, Defendant filed a motion, dated August 26, 1999, for judgment of acquittal, judgment notwithstanding verdict and/or new trial. The filing date was after the ten-day period allowed by HRPP Rules 29(c) and 33 [12] for such motions. On November 18, 1999, the court heard Defendant's motion, but denied it "on the basis that the [motion] [13] was untimely." The court explained that the ten-day period must be strictly complied with, the court was without authority to waive that period, and, thus, it "no longer ha[d] jurisdiction . . . and therefore would be unable to entertain the motion."

On November 18, 1999, the court entered a judgment of conviction and sentence as to Counts I and II. On December 6, 1999, Defendant filed a notice of appeal.

## II.

▮▮▮ On appeal, Defendant first contends that the court erred in denying his motion to dismiss for preindictment delay because the delay allegedly resulted in "a

---

11. With regard to Instruction No. 20, the court further instructed as follows:

Ladies and gentlemen, the Court would like to make a correction with regard to instruction number 20. Instruction number 20 relates to the unlawful possession of drug paraphernalia as I read the instruction.

I wish to stand corrected. The correct charge is unlawful use of drug paraphernalia. That's how it's described in the statute.

So with regard to instruction number 20, when you receive it in the jury deliberating room, please be aware that the correct technical charge is unlawful use of drug paraphernalia, rather than unlawful possession of drug paraphernalia. The rest of the instruction is correct.

12. HRPP Rule 29(c) provides in relevant part that

*[i]f the jury returns a verdict of guilty* or is discharged without having returned a verdict, *a motion for judgment of acquittal may be made*

or renewed *within 10 days* after the jury is discharged or within such further time as the court may fix during the 10-day period.

(Emphases added.)

HRPP Rule 33 states in pertinent part that

*[a] motion for new trial shall be made within 10 days after verdict or finding of guilty* or within such further time as the court may fix during the 10-day period.

(Emphasis added.)

13. In ruling on the motion for judgment of acquittal, the court stated that "the Court will deny the motion . . . on the basis that the *possession* was untimely." (Emphasis added.) This appears to be either a misstatement by the court or an error in transcription because the preceding discussion related to the time limitation on filing motions.

dimming of memories and loss of unidentified witnesses." He additionally asserts that the absence of a police tape recording affected his ability "to defend against his purported statement" because he had to rely upon his limited memory.

In reviewing a constitutional due process claim of prejudice engendered by preindictment delay, "the 'due process inquiry must consider the reasons for the delay in prosecution as well as the prejudice to the accused.'" *Carvalho*, 79 Hawai'i at 167, 880 P.2d at 219 (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)) (brackets omitted). Therefore, a balancing approach is applied, weighing the "substantial prejudice to the defendant's right to a fair trial" against "the reasons for the delay[.]" *Id.* at 167, 880 P.2d at 219–20 (quoting *State v. English*, 61 Haw. 12, 17 n. 8, 17, 18, 594 P.2d 1069, 1073 n. 3, 1073 (1978)).

In *Carvalho*, the defendant, who was convicted of promoting a dangerous drug in the first degree, HRS § 712–1241(1)(b)(ii)(A) (1985), was not indicted until nearly one year "after the case had been 'conferred' [by the police] with the prosecutor's office." *Id.* at 168, 880 P.2d at 220. The defendant argued that, due to the delay, he could not recollect the events on the day of the alleged incident and his loss of memory prevented him from identifying "alibi witnesses" for that date. *Id.*

In disagreeing with the loss of memory claim, the Intermediate Court of Appeals (the ICA) noted that "a mere claim of loss of memory coupled with a lapse of time does not, of itself, establish prejudice[.]" *Id.* (quoting *State v. Dunphy*, 71 Haw. 537, 542, 797 P.2d 1312, 1315 (1990)). It was concluded that prejudice was not demonstrated at trial because the defendant was able to testify that he did not engage in the illegal sale of drugs and to recount the events of the visit by the informant with whom the defendant had allegedly engaged in a sale of drugs. *Id.* at 168, 880 P.2d at 220–21.

In rejecting the defendant's second assertion that he was "prejudiced by the loss of potential alibi witnesses," the ICA explained that "in a claim of pre-indictment delay, 'the proof must be definite and not speculative' in order to establish prejudice.'" *Id.* at 169, 880 P.2d at 221 (quoting *State v. Broughton*, 156 Ariz. 394, 752 P.2d 483, 487 (1988)). It pointed out that "the generalized prospect of ... lost witnesses does not amount to actual prejudice" and, hence, the defendant's argument that there was a loss of potential witnesses was "speculative at best." *Id.* (internal quotation marks and citations omitted). It also observed that the defendant had not demonstrated "a good faith attempt to locate the witness" he had identified, "a necessary factor in establishing prejudice resulting from a lost witness." *Id.* (quoting *State v. Bryson*, 53 Haw. 652, 657, 500 P.2d 1171, 1174 (1972) (brackets omitted)). Applying *Carvalho*, we conclude the court did not err in denying Defendant's motion to dismiss.

III.

A.

Defendant's broad claim that "there was a dimming of memories" is "[a] bald assertion of [Defendant's] loss of memory [which] is ... [in]sufficient to establish substantial prejudice." *English*, 61 Haw. at 19, 594 P.2d at 1074. As *Carvalho* indicated, "a mere claim of loss of memory coupled with a lapse of time does not, of itself, establish prejudice[.]" 79 Hawai'i at 168, 880 P.2d at 220 (quoting *Dunphy*, 71 Haw. at 542, 797 P.2d at 1315); *see also State v. Levi*, 67 Haw. 247, 249, 686 P.2d 9, 10 (1984) (stating that memory loss based on a "31 month delay" was insufficient to show substantial prejudice).

B.

Defendant's loss of memory claim is apparently associated with his assertion that the absence of a tape recording of his Form 252 statement affected his defense. He asserts the absence of a tape recording "reduced the parties to debating the credibility of a typewritten [Form 252] based on the respective recollections of a police officer and [Defendant]." We conclude that the absence of a tape recording of Defendant's statement did not substantially prejudice Defendant.

This court has recognized that "having an electronic recording of all custodial interrogations would undoubtedly assist the trier of fact in ascertaining the truth[.]" *Kekona*, 77 Hawai'i at 412, 886 P.2d at 749. Such a recording "would be helpful to both the suspect and the police by obviating the 'swearing contest' which too often arises[.]" *Id.* at 409, 886 P.2d at 746. Thus, in such situations, "[a] recording would also help to demonstrate the voluntariness of the confession, the context in which a particular statement was made and of course, the actual content of the statement." *Id.* (citation and internal quotation marks omitted).

In *Kekona*, the defendant contended, *inter alia*, that "the [prosecution] failed to meet its burden of proof to establish that [the defendant] made a valid waiver of his rights since the [prosecution] failed to tape record the interrogation." *Id.* at 404, 886 P.2d at 741. Nonetheless, this court held that the due process clause of our State Constitution does not require such a practice. *See id.* at 409, 886 P.2d at 746. It was pointed out in *Kekona* that the defendant was not prejudiced by the lack of a tape recording because the defense had ample opportunity to cross-examine the officers taking the statement and the defendant "provided testimony of his version of the events that transpired during the interrogation." *Id.* Thus, this court decided it "cannot say that the failure of the police to manufacture a tape recording of [the defendant]'s station house interrogation was so detrimental to his defense that it necessarily resulted in a[n] unfair trial." *Id.*

While this case does not arise in the same context as *Kekona*, the considerations pertinent to Defendant's claims are analogous to those considered in that case.[14] Here, Defendant had "an opportunity to throughly cross examine" Aguilar, the interrogating officer, at the consolidated hearing on the motions to dismiss and to suppress, at the voluntariness hearing, and at trial, about the waiver of rights procedures, the interrogation, and Defendant's statement. *See Kekona*, 77 Hawai'i at 408–09, 886 P.2d at 745–46.

Furthermore, Defendant "provided testimony of his version of the events that transpired during the interrogation" at the voluntariness hearing and again at trial. *Id.* at 409, 886 P.2d at 746. He was able to recall and to testify to the events which he claimed made his Form 252 statement inaccurate and a product of coercion. *See Carvalho*, 79 Hawai'i at 168, 880 P.2d at 220–21. Under these circumstances, the officer's failure to tape record Defendant's oral statements did not amount to substantial prejudice depriving Defendant of his right to a fair trial.

## IV.

■ We conclude Defendant's contention that the preindictment delay led to the loss of "*unidentified* witnesses" is equally unpersuasive. (Emphasis added.) Reviewing Defendant's motion to dismiss, it appears that Stacy, who subsequently moved to the mainland, may have been one of the potential witnesses whom Defendant claims was "lost." *See supra* note 5. The record, however, does not demonstrate that Defendant made any "good faith attempt to locate" Stacy, such an effort being "a necessary factor in establishing prejudice resulting from a lost witness." *Carvalho*, 79 Hawai'i at 169, 880 P.2d at 221 (quoting *Bryson*, 53 Haw. at 657, 500 P.2d at 1174). Moreover, Defendant does not reveal how the unidentified witnesses or their testimony would exculpate him. *See id.* "[I]n a claim of pre-indictment delay, 'the proof must be definite and not speculative' in order to establish prejudice." *Id.* (quoting *Broughton*, 752 P.2d at 487). The prejudice resulting from his purported loss of potential witnesses is "speculative at best." *Id.* Because Defendant has failed to identify potential witnesses and indicate how their testimony would have added to his defense, he has not shown substantial prejudice. *See id.* at 170, 880 P.2d at 222 (citing *State v. Weeks*, 137 N.H. 687, 635 A.2d 439, 446 (1993); *Broughton*, 752 P.2d at 487).

---

**14.** *Kekona* involved a motion to suppress and the defendant claimed there was an affirmative duty to tape record his statement. Here, Defendant claims that with respect to his motion to dismiss, the failure to tape record his statement is a factor in assessing the effect of preindictment delay on his recollection of relevant matters.

## V.

■ We note that, in *Carvalho,* the prosecution argued that the preindictment delay was due to "re-assignments within the prosecutor's office, 'holidays and administrative days off,' a backlog of cases at the grand jury, a planned consolidation with another case, lack of time at the grand jury proceedings, and the illness of the informant." *Id.* at 168, 880 P.2d at 220 (internal quotation marks omitted). The prosecution, in the present case, did not advance any specific reasons for delay, although it stated that additional investigations were conducted during the delay period. Generally, prejudice to a defendant's right to a fair trial is weighed against the prosecution's reasons for the delay. *See id.* at 167, 880 P.2d at 219–20. But "[b]ecause Defendant failed to establish substantial prejudice to his right to a fair trial, there is no imperative to consider the reasons for prosecutorial delay." *Id.* (citing *Weeks,* 635 A.2d at 446; *State v. Krinitt,* 251 Mont. 28, 823 P.2d 848, 851 (1991)).

For these reasons, we hold that the court properly denied Defendant's motion to dismiss.

## VI.

■ Defendant's second contention on appeal is that references in Instructions Nos. 18 and 20 to the purported locations of the incriminating evidence in bedroom 1, *see supra* pages 13–15, constituted an improper comment on the evidence. We hold that Instructions Nos. 18 and 20 were erroneous in this respect.

■ "When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, errone-

ous, inconsistent, or misleading[.]" *State v. Gomes,* 93 Hawai'i 13, 18, 995 P.2d 314, 319 (2000) (quoting *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995)) (internal citations omitted). "[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Id.* (quoting *State v. Pinero,* 70 Haw. 509, 527, 778 P.2d 704, 716 (1989)) (internal citations omitted).

■ Although Defendant failed to object to Instructions Nos. 18 and 20, "[w]e may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Klinge,* 92 Hawai'i 577, 584, 994 P.2d 509, 516 (2000) (citations omitted). *See also* HRPP Rule 52(b) (2000) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Here, if the jury instructions were erroneous, they would have gravely affected Defendant's right to a fair trial. Thus, we conclude that Defendant's failure to object does not preclude our review of the instructions under the plain error doctrine.

## VII.

In *Tanaka,* a question arose.as to whether drug and drug paraphernalia were found in a rear shed occupied by a temporary resident, in the living room where the neighbors often congregated, or in the defendants' bedroom. *See* 92 Hawai'i at 679, 994 P.2d at 611. The disputed location of the incriminating items was of pivotal importance to the defendants' defense. *See id.* at 678–79, 994 P.2d at 610–11.

Following the rule set forth in *State v. Arceo,* 84 Hawai'i 1, 928 P.2d 843 (1996),[15] the

---

15. In *Arceo,* this court held that the following rule governed a defendant's constitutional right to a unanimous verdict:

[W]hen separate and distinct culpable acts are subsumed within a single count . . .—any one of which could support a conviction thereunder-and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its

case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, i.e., an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

84 Hawai'i at 32–33, 928 P.2d at 874–75 (footnote omitted).

trial court in *Tanaka* instructed the jury that unanimity was required as to possession of the items underlying each guilty verdict. *See* 92 Hawai'i at 677, 994 P.2d at 609. On appeal, the defendants pointed out, *inter alia*, that "each unanimity instruction specified where each potentially incriminating item was found in the house." *Id.* at 678, 994 P.2d at 610. For example, an appendix relating to the count of promoting a dangerous drug in the third degree described "item # 1" as "[m]ethamphetamine found in the glass pipe *from jacket pocket, Bedroom # 1 closet* [.]" *Id.* (emphasis in original). The ICA noted that the trial court's "categorical and unqualified" references to the location of the incriminating items constituted improper commentary under HRE Rule 1102 [16] because the instructions "were 'conclusive in nature and connoted a predetermination' as to the place each item was found[.]" *Id.* (quoting *State v. Nomura*, 79 Hawai'i 413, 416–18, 903 P.2d 718, 721–23 (App.)), *cert. denied*, 80 Hawai'i 187, 907 P.2d 773 (1995) (brackets omitted) (stating that "the term 'victim' is conclusive in nature and connotes a predetermination that the person referred to had in fact been wronged"). The ICA "discern[ed] a distinct and reasonable possibility that the [trial] court's error in commenting upon the location of the items contributed to the convictions of the [defendants]." *Id.* at 679, 994 P.2d at 611. It, therefore, vacated the judgment of conviction and remanded the case for a new trial. *Id.*

## VIII.

### A.

As set forth previously, Instruction No. 18 directed the jury that, in order to find Defendant guilty of the offense of promoting a dangerous drug in the third degree, it must "unanimously find beyond a reasonable doubt that Defendant ... was in actual or constructive possession of any one of" Exhibits 1, 2, 3, and 4. In the special interrogatory for Count I, the jury found that Defendant was in possession of all the exhibits listed in Instruction No. 18.

We observe that, as a general matter, Defendant put in issue the location of all the drugs recovered because he claimed to be unaware of the presence of any drugs in the residence. While the jury need not have believed Defendant, we cannot conclude that the court's direction to the jury as to the places from which the exhibits were recovered or located, as opposed only to the identification of the exhibits, was harmless error. Contrary to the prosecution's evidence, Defendant testified he did not know Exhibit 1 was located in bedroom 1, and, although he acknowledged that Exhibit 3, Stacy's container,[17] was in bedroom 1, he denied knowing it contained illegal drugs. Thus, it was the burden of the prosecution to prove beyond a reasonable doubt that the pipe was in bedroom 1 and that methamphetamine was in "a plastic container" in bedroom 1—a burden it was relieved of by the court's statement to the jury that the pipe and the methamphetamine in the plastic container were indeed "located" in bedroom 1.

The locations of Exhibit 2, the ziploc bags containing methamphetamine, and Exhibit 4, the scale, were specifically disputed by Defendant. *See supra* page 12 and note 10. At trial, when questioned about five ziploc bags containing methamphetamine and the scale, Defendant denied that the ziploc bags were "in the mattress" and the scale on a "refrigerator in bedroom 1," as suggested by the prosecution. *See State v. Cabrera*, 90 Hawai'i 359, 365, 978 P.2d 797, 803 (1999); *Tanaka*, 92 Hawai'i at 679, 994 P.2d at 611. Thus, with respect to the locations of these disputed items, the jury, as fact finder, had the duty to determine (1) where the incriminating evidence was found, and (2) whether the locations were sufficient to satisfy the element of possession. *See Kaeo v. Davis*, 68 Haw. 447, 460, 719 P.2d 387, 395 (1986) ("Under our system of jurisprudence, the jury is the finder of fact.") (citation omitted). This essential duty of the jury was usurped by the court's improper comments in Instructions

---

**16.** HRE Rule 1102 provides in relevant part that "[t]he court shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence."

**17.** At trial, Defendant referred to the container as Stacy's "pillbox."

Nos. 18 and 20 on the location of the evidence. *See Tanaka,* 92 Hawai'i at 678, 994 P.2d at 610; HRE Rule 1102.

■ Under the harmless-beyond-a-reasonable-doubt standard, the question is "whether there is a reasonable possibility that error may have contributed to conviction." *Cabrera,* 90 Hawai'i at 365, 978 P.2d at 803 (citing *State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981)). "If there is ... a reasonable possibility ..., then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." *Id.* (citations omitted). Thus, as in *Tanaka,* there is here a "reasonable possibility" that Defendant's constitutional right to a fair trial by the jury was impinged by the court's erroneous comment about the location of the items. *See Cabrera,* 90 Hawai'i at 365, 978 P.2d at 803; *Tanaka,* 92 Hawai'i at 679, 994 P.2d at 611.

### B.

An identical analysis applies to Instruction No. 20. That instruction informed the jury that it must "unanimously find beyond a reasonable doubt that Defendant ... was in actual or constructive possession of any one of" Exhibits 1, 4, and 40. In the special interrogatory for Count II, the jury found that Defendant was in possession of all three exhibits.

Again, the court's reference to the location of Exhibit 1, the glass pipe, and Exhibit 4, the scale, was error. As to Exhibit 40, an iron scraper, Defendant testified he saw it in Rilei's room. Consistent with the rationale previously stated, the references to the locations of the items in Instruction 20 constituted harmful error.

### IX.

■ Lastly, on appeal, Defendant maintains that the court erred in denying his motion for a judgment of acquittal or, in the alternative, motion for a new trial. HRPP Rules 29 and 33 clearly state that a motion for judgment of acquittal or new trial must be filed within ten days of the jury verdict. Furthermore, HRPP Rule 45(b) (2000) pro-

vides that "the court may not extend the time for taking any action under Rules 29[and] 33 ... of these rules ... except to the extent and under the conditions stated in them." The motion here was not filed within ten days of the jury verdict. The jury returned a guilty verdict on August 19, 1999. However, Defendant filed his motion for acquittal fourteen days later on September 2, 1999. Thus, Defendant's motion was four days late.

In *State v. Reed,* 77 Hawai'i 72, 83, 881 P.2d 1218, 1229 (1994), *overruled on other grounds by State v. Balanza,* 93 Hawai'i 279, 1 P.3d 281 (2000), this court held that the trial court erred in conducting a consolidated hearing on the defendant's motions for judgment of acquittal and a new trial because under HRPP Rules 29(c) and 33, the defendant's motions were untimely filed. The defendant filed his motions more than two months after the date of the judgment. *See id.* This court held that "the trial court's rulings denying [the defendant's] motions for new trial and judgment of acquittal are null and void." *Id.* It reasoned that the trial court "was without authority to waive the time requirements set forth in HRPP 29(c) and 33 and, therefore, was without jurisdiction to entertain [the defendant's] motions for new trial and judgment of acquittal." *Id.* It also stated that, "because the time limitations for filing a motion for new trial contained in HRPP 33 are jurisdictional, 'the ten day limitation period must be strictly complied with.'" *Id.* (quoting *State v. Meafou,* 67 Haw. 41, 44–45, 677 P.2d 459, 462 (1984)). *Cf. United States v. Hocking,* 841 F.2d 735, 736 (7th Cir.1988) (stating that "a court lacks [the] adjudicatory power to dispose of an untimely motion under [Federal Rules of Criminal Procedure] Rules 29[and] 33"). Because the time limitations of HRPP Rules 29 and 33 must be "strictly complied with," *Meafou,* 67 Haw. at 45, 677 P.2d at 462, we hold that Defendant's motion for judgment of acquittal was untimely and the court did not err in denying the motion for lack of jurisdiction.

### X.

■ Because we remand the case, we must determine whether there was sufficient

evidence to convict Defendant. *See State v. Jones,* 96 Hawai'i 161, 184 n. 30, 29 P.3d 351, 373 n. 30, (2001) (determining that there was independent legally sufficient evidence to establish guilt, so as not to bar retrial based on double jeopardy principles). We conclude that, "view[ing the evidence] in the light most favorable to the prosecution ..., the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *State v. Vliet,* 91 Hawai'i 288, 292, 983 P.2d 189, 193 (1999). Detective Passos testified he found Exhibits 1–4, Exhibit 40, and Defendant's identification card in bedroom 1. Defendant testified that he occupied bedrooms 1 and 4 and that he was found by police in bedroom 1. Furthermore, Officer Haina testified that he found Defendant in bedroom 1.

In light of the aforementioned evidence, sufficient evidence existed to enable a reasonable mind to fairly conclude beyond a reasonable doubt that Defendant possessed the dangerous drug methamphetamine and unlawfully used drug paraphernalia. The incriminating items were found in the bedroom that Defendant admitted he occupied with Stacy. Therefore, there was sufficient evidence to support the convictions.

## XI.

For the foregoing reasons, we vacate the court's November 18, 1999 judgment of convictions and sentence and remand the case for disposition consistent with this opinion.

Concurring Opinion by LEVINSON, J.

I generally concur in the majority's analysis. In particular, I agree: (1) that the circuit court did not err in denying Crail's motion to dismiss the charges against him; (2) that Jury Instruction Nos. 18 and 20 erroneously contained improper comment on the evidence; (3) that Crail's motion for a judgment of acquittal was untimely filed; and (4) that Crail's convictions were supported by substantial evidence.

However, in light of the fact that Crail has not raised the circuit court's denial of his motion to suppress the statement that he made to the police on October 1, 1997 as a point of error on appeal, I believe that the majority's reliance on the opinion of the court in *State v. Kekona,* 77 Hawai'i 403, 886 P.2d 740 (1994), is both misplaced and gratuitous. As the majority recognizes, "this case does not arise in the same context as *Kekona,*" majority opinion at 179, 35 P.3d at 206 & n. 14, inasmuch as the material issue in *Kekona* was whether the circuit court erred in denying his "motion to *suppress* his confession on the grounds that ... because there was no tape recording of the session, no record existed to indicate a voluntary statement or waiver[.]" 77 Hawai'i at 405, 886 P.2d at 742 (emphasis added). Thus, the question on appeal was whether Kekona's confession should have been *suppressed* and not whether the charges against him should have been *dismissed,* hardly a surprise in light of the fact that suppression—rather than dismissal—is the remedy for the unlawful extraction by the police of an inadmissible statement. Crail has appealed only the denial of his motion to dismiss for alleged preindictment delay, and the *Kekona* analysis, as such, is inapposite to this case.

Nevertheless, the majority having invoked *Kekona,* I wish to reaffirm my adherence to the views expressed in my concurring opinion in that decision. *See Kekona,* 77 Hawai'i at 410–17, 886 P.2d at 747–54.